**GRAHAM & PENMAN, LLP**
Jason W. Graham (GA Bar No. 304595)
Raegan M. King (GA Bar No. 812035)
2989 Piedmont Road, NE, Suite 200
Atlanta, Georgia 30305
Telephone:   (404) 842-9380
Facsimile:   (678) 904-3110
Email:       jason@grahamandpenman.com
             raegan@grahamandpenman.com
*Pro hac vice applications pending*

**JOHNSON & JOHNSON LLP**
Neville L. Johnson (SBN 66329)
Douglas L. Johnson (SBN 209216)
James T. Ryan (SBN 210515)
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone:   (310) 975-1080
Facsimile:   (310) 975-1095
Email:       njohnson@jjllplaw.com
             djohnson@jjllplaw.com
             jryan@jjllplaw.com

Attorneys for Plaintiff,
ALLYSON NICHOLE BURNETT

FILED
CLERK, U.S. DISTRICT COURT
OCT 25 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ALLYSON NICHOLE BURNETT | CASE NO. **CV12-09203** DSF (VBKx) |
| Plaintiff, | |
| v. | COMPLAINT |
| ADAM YOUNG D/B/A OWL CITY, MATT THIESSEN, BRIAN LEE, UNIVERSAL MUSIC GROUP, INC., SONGS MUSIC PUBLISHING, LLC, CARLY RAE JEPSEN, SCHOOLBOY RECORDS, LLC, AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, BROADCAST MUSIC, INC., and SESAC, INC. | DEMAND FOR JURY TRIAL |
| Defendants. | |

1

1    Plaintiff Allyson Nichole Burnett ("Burnett"), demanding a trial by jury,
2 complains and alleges as follows against Defendants Adam Young d/b/a Owl City,
3 Matt Thiessen, Brian Lee, Universal Music Group Inc. ("Universal"), Songs Music
4 Publishing, LLC ("Songs"), Carly Rae Jepsen, and Schoolboy Records, Inc.
5 ("Schoolboy") (collectively "Defendants"); and American Society of Composers,
6 Authors and Publishers ("ASCAP"), Broadcast Music, Inc. ("BMI"), and SESAC,
7 Inc. ("SESAC") (collectively "Royalty Distributors"):

**I.**

**JURISDICTION AND VENUE**

10    1.    Plaintiff's Claim for Relief arises under the Copyright Laws of the
11 United States, as amended (17 U.S.C. § et seq.).   This Court has subject matter
12 jurisdiction over this claim pursuant to 28 U.S.C. §§ 1338 and 1331.

13    2.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) because
14 Defendants have committed acts of infringement in this judicial district, do
15 substantial business in the judicial district, have registered agents in this judicial
16 district, and Defendant Universal resides in this district.

17    3.    In particular, on information and belief, Defendants carry out
18 substantial, ongoing business activities within this judicial district, and a substantial
19 part of the Defendants' acts and omissions, in exploiting the musical composition
20 that gave rise to Plaintiff's claims for copyright infringement, occurred in the
21 Central District of California.

22    4.    On information and belief, each of the Defendants sued herein is the
23 agent, servant, and employee of each other, and of the other Defendants, and by
24 acting as herein alleged, acted within the course and scope of said agency and
25 employment, and with the full knowledge and consent of the remaining Defendants.
26 //
27 //
28

## II.

## THE PARTIES

### Plaintiff

5.     Plaintiff Burnett ("Plaintiff" or "Burnett") is a pop and rock singer and songwriter who resides in Huntsville, Alabama.  Plaintiff is the legal owner of the copyright for the song "AH, It's a Love Song" on her album *The Takeover*, which is registered with the United States Copyright Office (SR0000664830) with a registration date of October 19, 2010.  A true and correct copy of Plaintiff's Certificate of Registration is attached hereto as Exhibit 1.

### Defendants

6.     Plaintiff is informed and believes, and thereon alleges, that Defendant Adam Young is a pop singer and songwriter who resides in Owatonna, Minnesota.  On information and belief, Young has marketed, distributed, and otherwise exploited the Infringing Song (as defined herein) in California for his commercial benefit.

7.     Plaintiff is informed and believes, and thereon alleges, that Defendant Matt Thiessen is a pop singer and songwriter who, upon information and belief, resides in Nashville, Tennessee.  On information and belief, Thiessen has marketed, distributed, and otherwise exploited the Infringing Song in California for his commercial benefit.

8.     Plaintiff is informed and believes, and thereon alleges, that Defendant Brian Lee is a songwriter who, upon information and belief, resides in the United States and may be served wherever he may be found.  On information and belief, Lee has marketed, distributed, and otherwise exploited the Infringing Song in California for his commercial benefit.

9.     Plaintiff is informed and believes, and thereon alleges, that Defendant Carly Rae Jepsen is a pop singer who, upon information and belief, resides in Mission, British Columbia, Canada.  On information and belief, Jepsen has

COMPLAINT

1  marketed, distributed, and otherwise exploited the Infringing Song in California for
2  her commercial benefit.

3      10.   Plaintiff is informed and believes, and thereon alleges, that Defendant
4  Universal Music Group, Inc. is a Delaware corporation with its principal place of
5  business located at 2220 Colorado Avenue, Santa Monica, California 90404.
6  Universal may be served with a copy of the summons and complaint in this action
7  at the office of its California registered agent, CT Corporation System, located at
8  818 W. Seventh Street, Los Angeles, California 90017.  On information and belief,
9  Universal has marketed, distributed, and otherwise exploited the Infringing Song in
10  California for its commercial benefit.

11      11.   Plaintiff is informed and believes, and thereon alleges, that Defendant
12  Schoolboy Records, LLC is a Delaware corporation with its principal place of
13  business in New York, New York.  Schoolboy may be served with a copy of the
14  summons and complaint in this action at the office of its Delaware registered agent,
15  Eresidentagent, Inc., located at 28 Old Rudnick Lane, Dover, Delaware 19901.  On
16  information and belief, Schoolboy has marketed, distributed, and otherwise
17  exploited the Infringing Song in California for its commercial benefit.

18      12.   Plaintiff is informed and believes, and thereon alleges, that Defendant
19  Songs Music Publishing, LLC is a Delaware corporation with its principal place of
20  business located at 307 7th Avenue, Suite 2104, New York, New York 10001.
21  Songs may be served with a copy of the summons and complaint in this action at
22  the office of its California registered agent, 7024 Melrose Avenue, Suite 450, Los
23  Angeles, California 90038.  On information and belief, Song has marketed,
24  distributed, and otherwise exploited the Infringing Song in California for its
25  commercial benefit.

26      13.   Plaintiff is informed and believes, and thereon alleges, that Defendant
27  American Society of Composers, Authors and Publishers is an unincorporated,
28  voluntary membership association organized and existing under the laws of the

State of New York, with its principal office at One Lincoln Plaza, New York, New York, 10023, and may be served wherever it may be found.

14. Plaintiff is informed and believes, and thereon alleges, that Defendant Broadcast Music, Inc. is a New York corporation with its principal place of business located at 10 Music Square East, Nashville, Tennessee 37203. BMI may be served with a copy of the summons and complaint in this action at the office of its California registered agent, CSC-Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

15. Plaintiff is informed and believes, and thereon alleges, that Defendant SESAC, Inc. is a New York corporation with its principal place of business located at 55 Music Square East, Nashville, Tennessee 37203. SESAC may be served with a copy of the summons and complaint in this action at the office of its New York registered agent, Corporation Service Company, located at 80 State Street, Albany, New York 12207.

## III.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

16. Plaintiff owns the copyright in the infringed work Love Song (as defined herein).

17. Within three years of the date this Complaint is filed, Defendants caused to be marketed and/or distributed the infringing work to the public. On information and belief, the infringing work has been an enormous commercial success.

### Burnett's Song

18. Burnett started singing when she was four years old, and she has been pursuing her dream of being a singer and songwriter ever since. Burnett writes from the heart and many of her songs are borne from her personal experiences.

19. Before breaking off as a solo artist in 2009, Burnett fronted power-pop groups such as Atlanta based band The Soundtrack. Her first solo release, under

1   the pseudonym "Ally Cupcake," was her 2009 EP titled *Talk of the Town*, which

2   was produced by former A Day to Remember band member Tom Denney.  After

3   writing and performing under the name Ally Cupcake for several years, she

4   dropped the "Cupcake" and started using solely her real last name in approximately

5   September 2010.

6       20.   In December of 2009, Burnett wrote the lyrics and created the melody,

7   harmony, and rhythm for one of her most popular songs, "AH, It's A Love Song"

8   ("Love Song" or the "Infringed Song").  The "AH" in the song title are the initials

9   of the person who inspired the song.  A demonstration (or "demo") version of Love

10  Song was initially recorded on a friend's laptop in December 2009.

11      21.   Love Song opens with a few pick-up beats immediately followed by

12  the song's hook.  The hook is dominated by a unique vocal motif originally created

13  and sung by Burnett in December 2009 ("the Original Motif").  The Original Motif

14  is repeated throughout Love Song and has a catchy pop vibe that both draws people

15  in and sticks in people's heads.

16      22.   One author defines "motive (motif)" as follows:

17      Motive is a terse musical idea, usually announced at the beginning of
        a musical work.  It has been refined even more by Schoenberg, who
18      called it the "germ" of the idea."  It is a short, easily identifiable
        sequence of notes/pitches repeated throughout a work, and conveys a
19      rhythmic, melodic or harmonic idea, or a combination containing two
        or all three of these elements.  It is memorable and is repeated
20      throughout a piece, usually varied or developed to avoid monotony.
        As the germ of the idea it is a force driving forward movement in
21      larger forms, including symphonies, concertos, overtures, and opera.
        A motive usually carries within it a brief statement of three to eight
22      notes with the potential for extensive and creative variation and
        development.
23
    Ronald S. Rosen, Music and Copyright, 157-58 (2008).
24

25      23.   In general, a hook is a musical idea, often a short riff, passage, or

26  phrase, that is used in popular music to make a song appealing and to catch the ear

27  //

28  //

of the listener.  A hook can often be either melodic or rhythmic, and frequently incorporates the main motif or theme for a piece of music.  One author defines "hook" as follows:

> The "hook" is what makes the song particularly appealing to the listener.  It is usually a part of a song that is repeated, that contains memorable melody, rhythm or lyric, and that stays in the listener's mind.  For those who listen to pop music, the refrain Steve Wonder sings – "I just called to say I love you" – is the "hook" you cannot get it out of your mind after hearing it.  For the classical buff, the Schubert *Lied, Die Post*, with constant reminder at the end of each verse "*mein herz, mein herz*" ("my heart, my heart"), may be the ultimate hook for the love-sick.  But perhaps the most ubiquitous "hook" appears not in a song, but in Beethoven's Fifth Symphony: the famous three dots and a dash are repeated dozens of times.

Ronald S. Rosen, Music and Copyright, 244 n.74 (2008).

24.    More practically, the term "hook" is applicable to that portion of the song that literally "hooks" the listener and invites them to listen further.  Often, the "hook" of a song is found in the first few measures, as it is in both Love Song and Good Time.  Equally often, the "hook" is additionally or alternately an integral part of a song's "chorus."   The chorus is the recurring refrain that is interspersed throughout a song, in between the verses and other structural sections (such as the "bridge"), and that often contains the songs key lyrics.

25.    Love Song's complete "hook" is four measures in length, which is repeated to create an eight-measure section.  The "hook" in its entirety appears twice in the song.  The first and third measures of the "hook," found initially in measure 1 and 3, present a motive that is one of the main musical building blocks of the song.  This motive utilizes the pitch sequence, C-A-C-A-G, or scale degrees 5-3-5-3-2 in the key of F major.  Beyond the two instances of the actual "hook," the basic "cell" of pitches used in this sequence, 5-3-2, is found prominently throughout the piece, including in the chorus, second verse, and bridge.   The underlying rhythm of the original motive is also seen utilized separately from the

//

pitches.  The motive as a whole is, therefore, a primary element that contributes heavily to the overall construction of the song.

26.    In 2010, Burnett began working with producer Rob Freeman – former guitarist of Hidden in Plain View.  Together, they created *The Takeover* EP, which included Love Song as the third track.  Freeman assisted with the musical composition and arrangement of the Infringed Song around Burnett's original and unique vocal Original Motif.  Burnett began circulating initial versions (or "demos") of Love Song in early February of 2010.  *The Takeover* was released on April 6, 2010.

27.    *The Takeover*, including Love Song, is registered with the United States Copyright Office (SR0000664830) with a registration date of October 19, 2010.  Burnett and Freeman are both identified as authors on the copyright registration.  Freeman has assigned any rights he may have had in Love Song, including copyrights, to Burnett.

28.    From the dates of creation of Love Song and *The Takeover*, through the date of their registration, Burnett has complied in all respects with the Copyright Act of 1976 and all other laws governing copyright with respect to Love Song and *The Takeover*.

29.    The recording of Love Song in the album *The Takeover* has been distributed and sold through record stores, internet online sites (including Rhapsody, Amazon.com, and iTunes in the United States, Canada, Australia/New Zealand, U.K./European Union, Japan, Mexico, Latin America (including Brazil)) and other outlets, has been played on radio and television, and has been performed at live events and concerts, throughout the United States and in the Central District of California.  In addition, *The Takeover* was available for sale in select Hot Topic stores nationwide and has been played on the stores' overhead stereo system, via a company called PlayNetwork.  Various fan-posted videos of Love Song have been viewed on YouTube.

30.    In early 2009, Burnett licensed her songs to MTV Networks, a division of Viacom International, Inc. ("MTV"), for use in MTV's programming. Several of her songs were featured on seasons two and three of MTV's hit show *Jersey Shore*. Burnett is also the voice and co-writer behind the theme song for MTV's live, half hour show *The Seven*, which debuted in 2010.

31.    In early 2010, Burnett licensed her upcoming album *The Takeover*, including Love Song, to MTV. Love Song, along with other songs by Burnett, were featured on MTV's hit shows *The Hills* and *Friendzone*, which were first aired in 2010 and replayed throughout 2010 to the present.

32.    An excerpt from Love Song is featured in Episode 8 of Season 6 of *The Hills*, which originally aired on June 15, 2010. After a commercial break, the show returns to a jovial street scene showing what appears to be dancing to Love Song. This scene begins approximately twelve to thirteen minutes into the episode. The featured excerpt from Love Song is predominated by repetitions of the Original Motif. No other part of Love Song is featured in Episode 8 of Season 6 of *The Hills*. Episode 8 or Season 6 of *The Hills* is available to view with streaming media and/or is available for purchases through Netflix, iTunes, and Amazon.com.

33.    Episode 6 of Season 1 of MTV's *Friendzone*, which originally aired November 8, 2011, also features an excerpt from Love Song. Upon conclusion of the program's opening credits, the show's main programming begins with a graphic displaying the names of a potential couple accompanied by the Original Motif playing at a high volume. Love Song continues to play, but slowly decreases in volume, as the show progresses with scenes of the potential couple and spoken dialogue. The Original Motif dominates the non-scripted portion of the segment and is repeated as the dialogue begins. The excerpt of Love Song appears after approximately thirty-nine seconds of Episode 6 of Season 1 of *Friendzone*, and the episode is available to view via streaming media on mtv.com.

//

34.    One or more defendants had access to Love Song as early as February 2010, and extensively by early 2011.

35.    Defendants' extensive access to Love Song is sufficient to trigger the "inverse ratio rule," whereby a reduced standard of proof of substantial similarity is required when a high degree of access is shown.    However, the substantial similarity between the Original Motif and the Copied Motif (defined below) is striking under any standard of proof.

## Burnett's Song is Copied by Defendants

36.    Upon information and belief, Defendants Adam Young (d/b/a Owl City), Matt Thiessen, and Brian Lee ("the Infringing Songwriters") wrote the pop hit "Good Time" in December of 2011 ("Good Time" or "the Infringing Song").

37.    Following what appears to be a brief quasi-improvisational figure, Good Time leads with Burnett's Original Motif and repeats the Original Motif, in association with portions of the hook and chorus, twenty-two (22) times throughout the song ("the Copied Motif").    The song concludes with a children's chorus singing the Copied Motif.

38.    Additionally, the Copied Motif is used structurally in two primary ways: first, as the first and third measures of a four-measure phrase, which is identical to its use in Love Song, and second, as the first measure in a four-measure, varied repetition of the initial phrase.    When this second phrase appears, it is used in conjunction with the first, which creates an eight-measure section similar to that in Love Song.

39.    The Infringing Songwriters had access to and copied the Original Motif from Burnett's Love Song.    The melodic and vocal expression found in the third complete measure of Good Time, repeated twenty-two (22) times throughout the Infringing Song, is substantially and strikingly similar to Love Song's Original Motif.

//

40.    The Original Motif is a vocal line of five pitches over four beats, which appears for the first time in measure one of Love Song.   From a musicological standpoint, the Original Motif's pitches, which correspond to the scale degrees 5-3-5-3-2, within Love Song's key of F are textless.   There are no formal lyrics, and Burnett vocalizes using "Oh" syllables throughout.   The Original Motif is primary in the overall construction of the song.   The Original Motif's rhythm is expressed as an eighth note rest, four eighth notes, an eighth note rest and a quarter notes over four beats. The combination of pitches, rhythm, timbre, context, and lyric demonstrates the originality and creativity of the Original Motif.

41.    The Copied Motif is a vocal line of five notes over four beats, which appears for the first time in measure three of Good Time and is nearly identical to the Original Motif.   From a musicological standpoint, the Copied Motif's pitches, which correspond to the scale degrees 5-3-5-3-2 within Good Time's key of E♭ are similarly textless, lacking formal lyrics.   The Copied Motif is one of two primary motifs on which Good Time is based and anchors the primary textual motif.  The Copied Motif's rhythm is expressed as an eighth note rest, three eighth notes, and two quarter notes over four beats in the transcription authorized by Defendant Universal.  However, the expression of the Copied Motif as performed by Defendant does not correspond to the rhythm as transcribed.  If transcribed to reflect the shortness of the fourth note of the sequence as performed, and the ensuing gap between that note and the fifth, the rhythm would look either identical or virtually identical to that in Love Song, after accounting for the natural and slight inaccuracies of human performance.

42.    The Copied Motif has identical pitch content and sequence (5-3-5-3-2), identical melodic contour (the voice moves down, up, down, down), identical intervallic content (down a minor 3rd-up a minor 3rd-down a minor 3rd-down a major 2nd), identical rhythmic construction (8th rest, 8th note, 8th note, 8th note, 8th note, 8th rest, quarter note), identical rhythmic context (beginning on the down

beat of a 4/4 measure), and identical timbre (textless vocals)  to the Original Motif.
The similarities of pitch content and sequence, melodic contour, intervallic content,
rhythmic construction, rhythmic context, and timbre demonstrate that the Copied
Motif could not have been produced independently from the Original Motif.

43.   The substantial and striking similarity between the Original Motif and
the Copied Motif is amplified by the contextually similar placement and use of the
motifs, as both are identically used in the 1st and 3rd measure of a four-measure
phrase that opens the song and figures prominently as a "hook."   Furthermore,
structural similarities exist between the measures following both the Original Motif
and the Copied Motif.

**The Infringing Song is widely published and exploited by Defendants**

44.   Good Time was recorded by Owl City and Canadian artist Carly Rae
Jepsen for Owl City's upcoming album *The Midsummer Station*.  It was released as
the lead single from the album on June 26, 2012, and the album was released on
August 21, 2012.   Good Time also appeared on Carly Rae Jepsen's second album
*Kiss*, released on September 18, 2012. As of the filing of this complaint, the single
Good Time has been certified platinum by the Recording Industry Association of
America, selling more than 1 million copies worldwide. As of the filing of this
complaint, Good Time has reached number 8 on both "Billboard Hot 100" and
"Billboard Radio Songs" charts as well as number 6 on the "Billboard Pop Songs"
chart.  As of the filing of this complaint, the album *The Midsummer Station* has
reached number 7 on the "Billboard 200" chart.  As of the filing of this complaint,
the album *Kiss* has reached number 6 on the "Billboard 200" chart.  As of the filing
of this complaint, the official video for Good Time had been viewed over 38
million times on YouTube.  Indeed, various covers of Good Time by amateur artists
have been viewed over 14 million times on YouTube.

45.   Good Time, particularly the Copied Motif, has been marketed and
received as the "summer anthem" for 2012.  Short clips of Good Time featuring the

1   Copied Motif were played repeatedly during the 2012 Summer Olympics broadcast
2   by NBC.   The Copied Motif has also been used repeatedly in commercials for
3   Season 5 of the hit television show *90210*, and in NBC's commercials promoting
4   both Season 5 of the television show *Parks and Recreation* and Season 9 of *The*
5   *Office*, and separately in commercials promoting solely Season 9 of *The Office*, and
6   in trailer advertisements for the recently released movie *Hotel Transylvania*.

7       46.   Burnett received no credit or attribution for the composition of Good
8   Time.

9       47.   Many consumers of pop music are likely to be confused by the striking
10  and substantial similarity between the Original Motif and the Copied Motif.

11      48.   Unfortunately, many consumers may incorrectly assume that Burnett
12  copied her own Original Motif from the Infringing Songwriters due to the
13  widespread popularity and publication of Good Time.   Burnett's reputation as an
14  independent artist will be significantly damaged by such incorrect assumptions.

15      49.   Burnett has also suffered emotional and psychological damage from
16  uninformed fans asking her "Why did you copy that Owl City/Carly Rae Jepsen
17  song?"   Love Song has forever been destroyed as an asset in Burnett's portfolio of
18  authentic pop songs due to Defendants' infringement because it will always "sound
19  like Good Time" to pop music critics and consumers – despite the fact that Burnett
20  wrote and copyrighted the Original Motif.

21      50.   Defendants Young and Jepsen have copied, recorded, distributed, and
22  performed, and/or intend to copy, record, distribute, and perform the infringing
23  work Good Time to worldwide audiences and consumers.

24      51.   Defendants Universal, Songs, and Schoolboy have copied and
25  distributed, and/or intend to copy and distribute, the infringing work Good Time to
26  worldwide audiences and consumers.

27  //

28  //

# IV.

## CLAIMS FOR RELIEF

## COUNT I:  COPYRIGHT INFRINGEMENT

**(Against Defendants Adam Young d/b/a Owl City, Matt Thiessen, Brian Lee, Universal Music Group Inc., Songs Music Publishing, LLC, Carly Rae Jepsen, and Schoolboy Records, Inc.)**

52.    Plaintiff incorporates by reference all previous allegations as if fully set forth herein.

53.    Burnett is, and at all times material hereto was, the owner of the copyright in Love Song, and is entitled and authorized to protect it against copyright infringement, including the enforcement of copyright actions.  Love Song is an original work of authorship and is fixed in a tangible medium of expression.

54.    Burnett secured exclusive rights under 17 U.S.C. § 106, to "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and to "perform the copyrighted work publicly."

55.    On information and belief, the Infringing Songwriters each contributed to the creation of the musical composition Good Time, performed by Young and Jepsen, and appearing on the albums *Kiss* and *The Midsummer Station*.

56.    On information and belief, the Infringing Songwriters had access to, and copied and incorporated into the Copied Motif in Good Time, original portions of Burnett's Love Song, namely the Original Motif.

57.    There is a substantial similarity between the Original Motif in Love Song and the Copied Motif in Good Time due to the copying of the Infringed Song by the Infringing Songwriters.

58.    On information and belief, Defendants Young and Jepsen recorded Good Time for their respective albums, and have performed, and continue to perform, Good Time at concerts, on television and radio, and at other events.

59.    On information and belief, Defendants Universal, Songs, and School

Boy participated in and contributed to the exploitation of Good Time in the United States through sales of compact discs, digital downloads, radio and television airplay, and otherwise.

60.   On information and belief, Defendants have earned, and will continue to earn, substantial sums through their exploitation of Good Time.  They continue to actively exploit Good Time, particularly the Copied Motif, worldwide.

61.   Defendants never sought nor obtained Burnett's permission to copy, duplicate, perform, or otherwise use Burnett's Love Song or her Original Motif. Plaintiff has never granted Defendants authorization to copy, record, publish, perform, or make derivative works of Plaintiff's copyrighted Love Song.

62.   Defendants' copying, duplication, use, performance, and exploitation of the Copied Motif in Good Time constitute infringement of Burnett's copyright in Love Song.

63.   Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Burnett's copyright.  Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, caused to be made and distributed in the United States, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of phonorecords containing the copyrighted work owned by Plaintiff.  Each Defendant either knew, or should have reasonably known, that Love Song was protected by copyright.  Each Defendant continues to infringe upon Plaintiff's rights in and to the copyrighted work.

64.   As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff.   Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

65.   Burnett suffered, and will continue to suffer, substantial damage to her professional reputation and goodwill, as well as losses in an amount to be

1    determined at trial.

2       66.   In addition to Burnett's actual damages, she is entitled to receive the

3    profits made by the Defendants from their wrongful acts, pursuant to

4    17 U.S.C. § 504(b). Each Defendant should be required to account for all gains,

5    profits, and advantages derived by each Defendant from their acts of infringement.

6       67.   In the alternative, Burnett is entitled to, and may elect to choose

7    statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by

8    17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

9       68.   Burnett is entitled to, and may elect to choose injunctive relief under

10   17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing

11   composition and all sound recordings of Good Time and to an order under

12   17 U.S.C. § 503 that any of Defendants' infringing products be impounded and

13   destroyed.

14      69.   Burnett does not have an adequate remedy at law for Defendants'

15   wrongful conduct in that (i) Burnett's copyright is unique and valuable; (ii) the

16   infringement by Defendants constitutes continuing damage to Burnett's good will

17   and professional reputation; and (iii) Defendants' wrongful conduct, and the

18   damages resulting to Burnett therefrom constitutes continuing copyright

19   infringement and irreparable injury. Defendants' infringing conduct is continuing

20   and ongoing. Plaintiff has suffered, and will continue to suffer, irreparable injury

21   for which there is no adequate remedy at law, unless Defendants are enjoined by the

22   Court. Therefore, Plaintiff prays that each Defendant, their respective agents,

23   servants, employees, officers, attorneys, successors and assigns, and all of these

24   persons actively in concert or participation with each or any of them, be

25   preliminarily and permanently enjoined from directly or indirectly infringing upon

26   the copyright owned by Plaintiff in any manner, and from duplicating, causing to be

27   duplicated or aiding, contributing to, or participating in the unauthorized

28   duplication of each said copyrighted work. Plaintiff asks that all infringing works

1  be recalled and destroyed.

2       70.     Burnett is also entitled to recover her reasonable attorneys' fees and

3  costs of suit pursuant to 17 U.S.C. § 505.

4       71.     Each Defendant should pay to Plaintiff an award of prejudgment

5  interest according to the proof.

6       72.     The Defendants by their conduct are jointly and severally liable for

7  their violation of Burnett's copyrights.

## COUNT II:  DEMAND FOR CONSTRUCTIVE TRUST OR INTERPLEADER

**(Against Defendants American Society of Composers, Authors and Publishers, Broadcast Music, Inc., and SESAC, Inc.)**

12      73.     Plaintiff incorporates by reference all previous allegations as if fully

13 set forth herein.

14      74.     Plaintiff is entitled to a constructive trust over all profits and royalties

15 collected and held by the Royalty Distributors.   Alternatively, the Royalty

16 Distributors should be required to interplead all profits and royalties collected and

17 held by them into the registry of this Court.

18      75.     The Court has jurisdiction over this Demand for Interpleader pursuant

19 to 28 U.S.C. § 1335.   The Royalty Distributors have obligations to distribute

20 royalties with a value in excess of $500 to their members and licensors, and

21 minimal diversity exists between at least two of the claimants.

22      76.     In addition, this Court has jurisdiction over this Demand for

23 Interpleader pursuant to Federal Rule of Civil Procedure Rule 22.  Federal question

24 jurisdiction exists over this Demand for Interpleader because the underlying dispute

25 as to the royalties the Royalty Distributors collect and distribute arises under the

26 federal copyright statute, 17 U.S.C. § 101, *et seq.*

27      77.     Multiple claims exist to royalties for the song Good Time as detailed

28 herein (ASCAP Work ID: 884124494, BMI Work #: 14225487) ("the Disputed

1    Work").

2        78.    Specifically, Plaintiff Burnett and the Infringing Songwriters and other

3    Defendants claim an entitlement to royalties for the Disputed Work.

4        79.    The Royalty Distributors have no interest in, or information about, the

5    relative merits or priorities of the conflicting claims to royalties attributable to

6    public performance or exploitation (including but not limited to radio, television,

7    internet, and live performances) of any of the other rights in the Disputed Works;

8    rather, the Royalty Distributors are mere stakeholders only as to such public

9    performance royalties, and are not otherwise necessary parties to this action.

10       80.    As stakeholders, the Royalty Distributors have control over the

11    royalties to the Disputed Work to be interpleaded.  Further, the Royalty Distributors

12    are free from fault over the controversy surrounding the entitlement to royalties to

13    the Disputed Work.

14       81.    Pending the Court's determination as to whether Plaintiff or

15    Defendants are entitled to receive royalties for public performances of the Disputed

16    Work, the Royalty Distributors should be ordered to tender to the Clerk of this

17    Court for deposit in the registry of this Court any and all future sums representing

18    the entire amount of royalties being held for by the Royalty Distributors for public

19    performances of the Disputed Work as set forth above.

20       82.    The Court should further order that the Royalty Distributors are

21    discharged from further liability and from further participation in this action other

22    than to deposit all current and future domestic and foreign royalties that have

23    accrued, and that may accrue to the accounts of the Defendants with interests in the

24    Disputed Works, for public performances of such works, pending final resolution of

25    this matter and entry of an order of this Court directing the distribution of all such

26    royalties.

27    //

28    //

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### On the First Claim for Relief

1. For attorneys' fees and costs per statute;

2. For a constructive trust;

3. For disgorgement of profits;

4. For actual, compensatory, and statutory damages;

5. For pre-judgment interest;

6. For preliminary and permanent injunctive relief;

### On the Second Claim for Relief

7. For an order directing the Royalty Distributors to interplead funds;

8. For a constructive trust;

### On All Claims for Relief

9. For such other, further, and different legal and equitable relief as the Court deems proper under the circumstances.

DATED: October 25, 2012

JOHNSON & JOHNSON LLP

By _____

Neville L. Johnson
Douglas L. Johnson
James T. Ryan

GRAHAM & PENMAN, LLP
Jason W. Graham
Raegan M. King

Attorneys for Plaintiff,
ALLYSON NICHOLE BURNETT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C. § 38), and Local Rule 38-1.


DATED: October 25, 2012

JOHNSON & JOHNSON LLP

By _____

Neville L. Johnson
Douglas L. Johnson
James T. Ryan

GRAHAM & PENMAN, LLP
Jason W. Graham
Raegan M. King

Attorneys for Plaintiff,
ALLYSON NICHOLE BURNETT

20

EXHIBIT 1

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

**SR 664-830**

**Effective date of registration:**

October 19, 2010

---

## Title

| | |
|---|---|
| **Title of Work:** | The Takeover |
| **Contents Titles:** | Runaway |
| | The Deep End |
| | AH, It's a Love Song |
| | Let Go |
| | My Way |

## Completion/Publication

| | | | |
|---|---|---|---|
| **Year of Completion:** | 2010 | | |
| **Date of 1st Publication:** | April 6, 2010 | **Nation of 1st Publication:** | United States |

## Author

| | | | |
|---|---|---|---|
| ■ **Author:** | Allyson Nichole Burnett | | |
| **Pseudonym:** | Ally Cupcake, Ally Burnett | | |
| **Author Created:** | sound recording, performance, music, lyrics | | |
| **Work made for hire:** | No | | |
| **Citizen of:** | United States | **Domiciled in:** | United States |
| **Year Born:** | 1986 | | |
| **Pseudonymous:** | Yes | | |
| ■ **Author:** | Robert Andrew Freeman | | |
| **Author Created:** | sound recording, production, music, lyrics | | |
| **Citizen of:** | United States | **Domiciled in:** | United States |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Allyson Nichole Burnett |
| | 129 Day Dr., Brownsboro, AL, 35741 |

## Rights and Permissions

Exhibit 1

Name & Address:  JOHNSON & JOHNSON LLP
Neville L. Johnson (SBN 66329)
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Email: njohnson@jjllplaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Allyson Nichole Burnett

PLAINTIFF(S)

v.

Adam Young d/b/a Owl City; Matt Thiessen, Brian Lee;
Universal Music Group Inc.; Songs Music Publishing, LLC;
Carly Rae Jepsen; Schoolboy Records, Inc.;
American Society of Composers, Authors and Publishers;
Broadcast Music, Inc.; and SESAC, Inc.

DEFENDANT(S).

CASE NUMBER

CV12-09203 DSF (VBKx)

**SUMMONS**

TO:   DEFENDANT(S):  Adam Young d/b/a Owl City

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Neville L. Johnson_____, whose address is _439 North Canon Drive, Suite 200, Beverly Hills, California 90210_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

OCT 2 5 2012

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV12- 9203 DSF (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br><br>Allyson Nichole Burnett | **DEFENDANTS**<br><br>Adam Young d/b/a Owl City, Matt Thiessen, Brian Lee, Universal Music Group, Inc., Songs Music Publishing, LLC, Carly Rae Jepsen, Schoolboy Records, LLC, ASCAP, BMI, SESAC, Inc. |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Johnson & Johnson LLP, 439 North Canon Drive, Suite 200<br>Beverly Hills, CA 90210<br>(310) 975-1080 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ ___TBD___

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 USC sec. 101, et seq.; Copyright Infringement; 28 USC sec. 1335; Interpleader or Constructive Trust

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | |
| | ☐ 290 All Other Real Property | | | | |

# CV12-09203

**FOR OFFICE USE ONLY:**    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Alabama |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Sacramento County, Minnesota, Tennessee, Delaware, New York, Canada |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  10/25/2012

　　**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |